Pearson, O. J.
It is clear that if the defendants, who are his next of kin, are declared to be entitled to the property in controversy, and the complainants, who are his “liberated slaves,” and the peculiar objects of his bounty, are left ttf enter their new field of existence without anything to start on, the wishes and expectations of the testator will be disappointed.
It is also clear that if the testator had died in 1857, when his will was executed, or in 1866, after the ordinance of emancipation, the legacies would have vested and the intention of the testator been carried into effect. So the inquiry is, upon what ground does the fact that he happened to die in 1864, during the war, work the effect of defeating his will ?
*182 1st. It is said: The complainants were not persons in esse capable of taking a legacy at the death of the testator. True; but under the doctrine of trusts, and of executorydevises and bequests, property may be given to a person not in esse; for in such cases the trustee or heir at law or executor holds the legal title and fills the ownei-ship until the event happens, or the person is ascertained. Thus, a legacy to such of the children of A (he having no child) as may arrive at the age of 21 years, will be carried into effect. This doctrine is settled.
2d. It is said: The contingency in our case is too remote. The rule is, that the estate must be so limited that if it takes effect at all, it will take effect within a life or lives in being and 21 years, and a few months for gestation. In our case., as will be shown below, the result of a war then pending-was the event upon which depended the vesting of their legacies. That event could hardly, in the nature of things, be protracted beyond a life or lives in being and 21 years.
But a conclusive answer to this objection is, that the legacies are given to individuals who are named, to be paid to them if liberated, or when liberated, and that fact is obliged to be determined in the lifetime of the individual.
Our case, then, falls under the class of cases referred to by Mr. Smith, in his learned treatise on the subject of Executory Interests; 2 Fearne on Remainders, under the head Of Limitations of life annuities.
3d. It is said that the act of 1861 declared void all directions for the emancipation of slaves made by will; so that these slaves could not have been emancipated in the manner contemplated by the testator; ergo, he did not intend to make any provision for them if they should be liberated in any other manner.
After full consideration, according to my judgment, the fact of being liberated is the essence of the thing, and the manner of its being done is a mere circumstance which does *183 not affect the validity of the legacies; for, as it seems to me,, the paramount intention to make ample provision for these slaves if liberated, no matter how, and to give them •a fair start in the world, is clear.
If allowed to make a guess I should say this old man never heard of the act of 1861. But it is a public statute. We must act on general rules, and take for granted that he •did have notice of it. We are also to take for granted that he had notice of President Lincoln’s Proclamation of the 1st of •January, 1863, and of the fact that the condition of slavery had become an issue in the war; so. that if the United States succeeded in suppressing the rebellion every one expected the slaves to be liberated. And from the fact that this old man, with a knowledge of these matters, died, leaving his will unaltered and unrevoked, I feel bound to consider the matter as if he had said in so many words, “ should these ■slaves be liberated by the result of the war, or in any other manner, (I don’t care how,) I do, by this my last will, make provision for their support.” ■
The testator, in framing his will, had two objects in view; first, that the slaves should be emancipated; second, that when liberated they should be provided for by competent legacies.
The second depends upon the first, for should the slaves riot be liberated, they would have no occasion for, and be in•capable of, taking legacies.
But the fact of prior emancipation is not imposed by the testator as a condition precedent, and is merely a thing collateral. and necessary in the nature of things in order to make the legatees capable of taking; so there is nothing to .■show that the legacies were at all to depend on the manner in which their emancipation was effected.
It is true, when the will was executed the maimer contemplated by the testator was that it should be done according to the provisions of his will; but from the fact that he *184 kept the will unaltered and unrevoked, and left it at his death as an instrument to be of full force and effect, and that at this time events were transpiring which would probably result in emancipation in a way not contemplated by him at the time he executed his will, makes it clear that his intention was that the slaves should have the legacies “ when liberated,” without reference to the manner in which the liberation might be effected.
If this conclusion required further demonstration it is furnished by taking another view of our case. Suppose the testator had lived until after the ordinance of emancipation, or suppose the testator in his life time, to meet the requirements of the act of 1861, had taken the slaves out of the State and set them free, no question could have then been made as to the validity of their legacies. This proves that emancipation was the substance, and the manner of it was not of the essence of the thing on which the legacies are made to depend.
4th. It is said that, apart from the act of 1861, as the State was at the time of the death of the testator at war with the United States, his intention to give legacies to these slaves, should they be liberated by the result of the war,- will not be carried into effect by the courts of the State, because it was an act against the policy of the State at that time, and was in substance an inducement or bribe held out to the slaves to aid the government of the United States in its war upon the government of the Confederate States.
That the courts will not give effect to an agreement or a will which is against the public policy is a settled rule; but in my opinion that rule does not apply to the case before us.
We have a complicated form of government, or rather two forms of government. The citizen owes allegiance to both, and both act directly upon the individual. At the time of the death of the testator the government of the State was in the possession of men who were not qualified *185 to discharge the duties of their offices, not being bound by oath to support the Constitution of the United States, but on the contrary bound by an oath to support the Constitution of the Confederate States, which was at open war with the United States. None of the acts of the State government, as then administered, were valid. See the ordinance of 1865, making valid certain acts of the de facto government, and Blossom v. Van Amringe, ante, p. 133, and Wiley v. Worth, decided at Law during this Term.
In other words, at the time of the death of the testator, wJjen his will took effect, the State government was -wrongful, and formed a part of the government of the Confederate States. The legacies under consideration were against the policy of the Confederate States, and of the wrongful State government, but was in accordance with the policy of the government of the United States and - of the rightful government of the State, which was then suspended by usurpation, but must be taken to have-been.identical in interest and policy with the government of the United States.
Admit that the courts which formed a part of the wrongful State government in 1864, a.t the- death of the testator, could not have given effect to these legacies; the whole condition of things is now changed. Such proceedings have been had that the State now has a rightful government, and it seems to me clear that the courts, which make a part of this rightful government., cannot refuse to give effect, to legacies which are not opposed to the policy of the United States or to its policy as a part thereof, and acting in accordance therewith, on the ground that the legacies, at the time of the death of the testator, were opposed to the policy of the government of the Confederate States, and of the wrongful State government, which was then acting in accordance with the government of the Confederate States.
So far from this being the case, we have seen that our court could not have given effect either to the legislative or *186 judicial acts of the wrongful State government, except by force of the ordinance of a convention.
This view of the subject relieves me from the duty of expressing an opinion upon a point much discussed at the bar, and into which I choose not to enter, because both of the difficulty of its solution and the many important consequences involved.
I refer to the question, At what time, and by Avhat act, was emancipation effected?
For whether it was by the proclamation of the 1st of January, 1863, or by the surrender and general military order of May, 1865 find the action of the owners of slaves in accordance therewith, or to the ordinance of 1865, is immaterial, it being only necessary for the purpose of my. conclusion that a war was pending at the death of the testator, upon the result of which emancipation was made to depend as an issue tendered and accepted.
In my opinion the complainants are entitled to a decree for the legacies claimed by them.
Reade, J.
I have carefully considered the opinions filed by my brothers Pearson and Battle, and I agree with the former, and for the reasons assigned by him. I have examined the case of Shinn v. Motley, 3 Jon. Eq., 490, and I do not think it has the resemblance in principle to this case, which is attributed io it by my brother Battle. If a legacy is given to the children of A, and A has no children living at the testator’s death, but subsequently has children, the subsequent children will take when they come into being, because it is evident that the testator meant that A’s children should take, and as he had no children at the testator’s death, the testator must of necessity have meant his after-born children. But if a legacy is left to the children of A, and A has children at the testator’s death, then they answer the description and take the whole to the exclusion of *187 after-born children, because there being persons filling the description, it is to be supposed that they are the persons meant, and the legacy will not be withheld from them to see if others may not come into being- who will answer the déscription also. The rule then is, that all who answer the description at the time when the legacy,is to be paid,will take, as where there is a life estate, and then to children, all the children at the end of the life estate will take, although they were not in being- at the testator’s death. Sims v. Garrott, 1 Dev. & Bat. Eq., 393; Petway v. Powell, 2 Dev. & Bat. Eq., 308. So here, if at the testator’s death he had had any liberated slaves, they would have answered the description, and would have taken the legacies, to the exclusion ot such as might thereafter be liberated; but, as he had no liberated slaves at the time of his death, and yet gave legacies to his “ liberated slaves,” he must of necessity have meant such as should be thereafter liberated.
I concede that the conflict of opinion makes this a doubtful question. And the fact that the opinion at which I have arrived effects the clear intention of +he testator, has not been without its influence.